**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| VIRAT SHARMA and<br>MICHAEL SCHULZ,<br>on behalf of Plaintiffs and the class<br>members described herein,<br><br>Plaintiffs,<br><br>v.<br><br>KAPITAL SOLUTIONS INC.;<br>TRAVIS JACOBS; and<br>JOHN DOES 1-20;<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 1:26-cv-02391<br>Honorable LaShonda A. Hunt |

## AMENDED COMPLAINT – CLASS ACTION

1. Plaintiffs, Virat Sharma and Michael Schulz, bring this action to secure redress for usurious and illegal loans (such as Exhibits A-B) made to Illinois residents.

2. Plaintiffs seek a declaratory judgment that the loans are void (Count I), damages pursuant to the Illinois Interest Act, 815 ILCS 205/6 (Count II), damages and injunctive and declaratory relief pursuant to the Illinois Predatory Loan Prevention Act, 815 ILCS 123/15-1-1 *et seq*. and the Illinois Consumer Fraud Act, 815 ILCS 505/1 *et seq*. (Count III—the Predatory Loan Prevention Act provides that violations are a violation of the Illinois Consumer Fraud Act), damages under RICO (Counts IV-V), and damages for unjust enrichment (Count VI).

## JURISDICTION AND VENUE

3. The Court has subject matter jurisdiction under 18 U.S.C. §1964 (RICO), 28 U.S.C. §1332(d) (Class Action Fairness Act), and 28 U.S.C. §1367 (supplemental jurisdiction).

4. On information and belief, there are more than 100 class members and the amount in controversy, on a classwide basis, exceeds $5 million, exclusive of interest and costs.

5. This Court has personal jurisdiction over Defendants because they:

a. Knowingly participated in the making and collection of unlawful loans to Illinois residents. In similar actions against purported "tribal" lenders, courts have held that personal jurisdiction over the persons involved in making the loans exists in the state where the borrower obtained a loan via the Internet, and in which loan funds were disbursed via ACH transfer. *Gingras v. Rosette*, 5:15cv101, 2016 U.S. Dist. LEXIS 66833, 2016 WL 2932163, at *2-3, *9 (D. Vt. May 18, 2016), *aff'd sub nom. Gingras v. Think Fin., Inc.*, 922 F.3d 112 (2d Cir. 2019) (finding that tribal lending entity's contacts with Vermont "would have been sufficient to subject [the tribal entity] to personal jurisdiction in Vermont" for purposes of claims for violations of state and federal law, including state usury laws and RICO, where tribal entity operated a website that advertised loans in Vermont, sent emails and loan applications to Vermont consumers and transferred loan principal to consumers' Vermont bank accounts); *Duggan v. Martorello,* 18cv12277, 2022 U.S. Dist. LEXIS 58075, at *33-34, 2022 WL 952183 (D. Mass. Mar. 30, 2022); *Dawkins v. Blue Dart Ventures,* 8:20cv2353, 2021 U.S. Dist. LEXIS 130297 (M.D. Fla. Apr. 1, 2021).

b. Selected which states to offer loans in, thereby targeting those states. *Illinois v. Hemi Group, LLC,* 622 F.3d 754, 760 (7th Cir. 2010).

6. Venue is proper because acts to obtain and collect the loan impacted Plaintiff in Illinois.

7. Article III is satisfied because actions for statutory damages and invalidation of loans for usury were entertained by the courts of England and the United States in 1787. English Usury Act of 1713, 12 Anne Session 2 c. 17. All thirteen original American states replaced the English usury statutes with their own usury laws between 1641 and 1791. Christopher L. Peterson, *Usury Law, Payday Loans, and Statutory Sleight of Hand: Salience Distortion in American Credit Pricing Limits*, 92

Minnesota Law Review 1110, 1116-18 (April 2008), summarizing statutes allowing 5% to 8% interest.

## PARTIES AND OTHERS

### Plaintiffs

8. Plaintiff Virat Sharma is a citizen of Illinois and a resident of Berwyn, Illinois.

9. Plaintiff Michael Schulz is a citizen of Illinois and a resident of Chicago, Illinois.

### Defendant Kapital Solutions

10. Defendant Kapital Solutions Inc. ("Kapital Solutions") is a corporation organized under the laws of Canada with its principal place of business in Montreal, Quebec. Its principal address is 510 Décarie Blvd., Montréal, Québec, H4L3K9, Canada.

11. Kapital Solutions is an e-commerce software development company. It provides payment processing infrastructure and solutions (Exhibits C-D ).

12. The functions performed by Kapital Solutions include "automated payment services for financing providers." (Exhibit C) Kapital Solutions states, " If you want to accept payments online, Kapcharge makes it easy. Our online payment solutions: o Enable your borrowers to pay online or by phone. o Accept a wide variety of popular payment methods. o Alert borrowers about upcoming payments to strengthen your cash flow. o Feature real-time reporting and reconciliation dashboards."

13. Kapital Solutions also offers "loan application processing," "approval," and "repayment." The services provided include the underwriting of the loans, which it describes as "Integrates risk management tools to minimize online transaction fraud for financial service providers."

14. Kapital Solutions also provides accounting services, such as transaction histories, for the lenders.

15. These services were essential to the making and collection of the loans at issue.

16. Kapital Solutions was fully aware of the terms of the loans at issue herein.

17. Kapital Solutions seeks out business from high-interest Internet lenders. Its website (Exhibit C) contains the logo of the Online Lenders Alliance, an organization of such lenders, indicating it is a member.

18. Kapital Solutions regularly schedules dedicated meeting booths at the annual OLA Tribal Lending Conference.

19. Kapital Solutions has senior company leaders, including the Chief Marketing Officer and fintech account reps, attend these conventions to market and provide demonstrations.

20. Processing transactions for high-interest Internet lenders is more profitable than processing transactions for lenders that comply with state usury laws.

21. Kapital Solutions thus intentionally seeks to enable high-interest Internet lenders to disburse and receive funds via Automated Clearinghouse transactions, in which funds are deposited in or removed from a consumer's bank account, and to do so automatically.

22. Kapital Solutions was well aware of the likely illegality of loans made over the Internet to borrowers in states such as Illinois with usury laws that imposed rate caps that the loans exceeded. Among other things, such legal issues were frequently discussed through the Online Lenders Alliance.

23. Kapital Solutions nevertheless entered into agreements with the online lenders described herein to provide the technological, underwriting, payment processing, and electronic funds transfer support necessary for the lenders to advertise, issue, and collect the unlawful debts at issue in this litigation. On information and belief, Kapital Solutions received a share of the revenue from the loans issued in return for its services.

24. Kapital Solutions has or had a page on its website in which it seeks business from "Tribal Lending." (Exhibit C)

**Travis Jacobs**

25. Defendant Travis Jacobs is a natural person and resident of Canada. He can be served at 759 rue du Square-Victoria, Suite 200, Montreal, Quebec H2Y 2J7.

26. On information and belief, Jacobs is one of the main participants behind the creation, development, and implementation of the "First Nations Lenders' Authority" ("FNLA"), 1 Patton Road, P.O. Box 2012, Mohawk Territory of Kahnawake, Quebec, J0L 1B0, Canada, which he represented to be a regulator chartered to operate the tribal lenders. (Exhibit E)

27. Jacobs held himself out as Secretary of the FNLA. (Exhibit F) He was also its contact person. (Exhibit G, p. 12)

**John Does**

28. John Does 1-20 are other natural or artificial persons who participated in the acts complained of herein.

**LENDING SCHEME**

29. Defendants made and continue to make loans to residents of Illinois via the Internet. Funds were disbursed by means of ACH transfers to the borrowers' respective bank accounts in Illinois. Repayment was made via ACH transfers from the borrowers' respective bank accounts in Illinois.

30. To cover up and conceal the illegal lending activities, Defendants had one Carolyn Stalk register the trade names used to make the loans in the province of Quebec, Canada. (Exhibit H)

31. The lending scheme began no later than 2018 – when the earliest of the trade names used therein was registered – and is continuing at the present time, over eight years later.

32. FNLA purported to authorize and regulate the making of high-interest loans via a number of trade names and websites. (Exhibit E)

33. The trade names and websites ("FNLA websites") included:

a. Dash of Cash, www.dashofcash.com (Exhibit I)

b. Rapital Capital, www.rapitalcapital.com (Exhibit J);

c. Uncle Warbucks, www.unclewarbucks.com (Exhibit K);

d. Money Messiah, www.moneymessiah.com (Exhibit L);

e. Speedy Servicing.

34. The lenders display the logo of the Online Lenders Alliance.

35. FNLA represented that it had partnerships with Kapital Solutions and Jacob's firm, Lazarus Legal. (Exhibit G, p. 11) In fact, no tribal authority authorized the FNLA to act on its behalf. (Exhibits M-N)

36. On information and belief, all ACH transfers were made by Kapital Solutions.

37. The interest rates on the loans were many times the maximum permitted in Illinois (or Canada).

38. The websites and loan documents recited that each lender was a "Mohawk or First Nations entity" located within the Mohawk Community of Kahnawake, which is a federally recognized First Nations entity and enjoys sovereign immunity, under the auspices of the FNLA. (Exhibit I-L)

39. This is not true. No tribal government authorized any of the actions complained of.

40. FNLA was created in order to further the Native American cover, by purporting to be a regulatory authority regulating the making of loans from Native American reservations in Quebec. In fact, it had no authority to do so.

41. The FNLA allowed anyone to apply for certification, charging US (not Canadian) $20,000 per year for a lender to become a "General Member," US$7,500 per year to become an "Affiliate Member" (e.g., companies which "assist" licensed lenders), and US$5,000 for "approved vendors."

42. The FNLA then granted licenses to each of the websites listed above, which licenses were available via a link on each website so that any consumer accessing the website would believe the lender to be legitimately licensed by the Mohawks of Kahnawake.

43. However, no such charter was ever recognized by the Council, or any other legitimate governing authority.

44. Defendants' loan agreements contain a choice-of-law provision indicating

the laws of the Mohawk govern. There is no such law.

45. Under Canadian federal law, a loan with an interest rate greater than 35% per annum (from January 1, 2025) or 60% per annum (prior to January 1, 2025) is a criminal offense, with no exception for loans made by persons claiming affiliation with a First Nation. (Section 347 of the Criminal Code of Canada)

## PLAINTIFFS' TRANSACTIONS

46. Plaintiff Sharma obtained an $800 loan via www.rapitalcapital.com on October 7, 2025, at a disclosed annual percentage rate of 487%. (Exhibit A)

47. Plaintiff Sharma paid a total of $1,225 to Rapital Capital, the last payment being on December 26, 2025.

48. Plaintiff Schulz obtained a $1,000 loan via www.dashofcash.com on May 22, 2025, at a disclosed annual percentage rate of 430%. (Exhibit B)

49. Plaintiff Schulz has been unable to repay the loan.

50. The loans were made for personal purposes and not for business purposes.

51. The principal amounts were transferred to Plaintiffs' respective bank accounts in Illinois via ACH.

52. Repayments were to be made from Plaintiffs' respective bank accounts in Illinois via ACH.

53. On information and belief the ACH transfers were effectuated by Kapital Solutions, i.e., it disbursed and received payment of the loans.

54. Loans to Illinois residents made in the same manner as the loans to Plaintiffs are governed by the laws of the State of Illinois.

55. Attempting to circumvent state interest rate caps by fraudulently hiding behind tribal sovereign immunity has been found to constitute criminal conduct. On October 13, 2017, a jury in the U.S. District Court for the Southern District of New York convicted Scott Tucker and Timothy Muir on 14 felony counts for their operation of a network of tribal lending companies. *See United*

*States v. Tucker, et al.*, No. 1:16-cr-00091-PKC (S.D.N.Y). The conviction was affirmed in *United States v. Grote*, 961 F.3d 105 (2d Cir. 2020).

56. The excessive interest charges imposed by Defendants were intentional.

**ILLINOIS PROHIBITIONS ON PREDATORY LOANS**

57. Effective March 23, 2021, the Illinois Predatory Loan Prevention Act made it unlawful for anyone other than a bank to make loans to Illinois residents at annual percentage rates in excess of 36%. 815 ILCS 123/15-1-1 *et seq*. "Any loan made in violation of this Act is null and void and no person or entity shall have any right to collect, attempt to collect, receive, or retain any principal, fee, interest, or charges related to the loan." 815 ILCS 123/15-5-10.

58. Under 815 ILCS 123/15-10-5(b), "[a]ny violation of this Act, including the commission of an act prohibited under Article 5, constitutes a violation of the Consumer Fraud and Deceptive Business Practices Act."

59. Both before and after March 23, 2021, it was unlawful for anyone who did not have a bank or credit union charter or a consumer lending license issued by the Illinois Department of Financial and Professional Regulation to make loans at more than 9% interest. 815 ILCS 122/1-15, 4-5; 205 ILCS 670/1.

60. Any loans to Illinois residents at more than 9% that are made by unlicensed persons are void and unenforceable. 205 ILCS 670/20(d) ("Notwithstanding any other provision of this Section, if any person who does not have a license issued under this [Consumer Installment Loan] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the person who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan."); 815 ILCS 122/4-10(h) ("(h) Notwithstanding any other provision of this Section, if a lender who does not have a license issued under this [Payday Loan Reform] Act makes a loan pursuant to this Act to an Illinois consumer, then the loan shall be null and void and the lender who made the loan shall have no right to collect, receive, or retain any principal, interest, or charges related to the loan.").

61. Loans made by an unlicensed lender to an Illinois resident at an interest rate exceeding 9% violate the Interest Act, 815 ILCS 205/4, and are subject to statutory damages under 815 ILCS 205/6.

62. Illinois' criminal usury statute provides that the making of a loan by an unlicensed person at more than 20% interest is a felony. 720 ILCS 5/17-59 (formerly 720 ILCS 5/39-1 *et seq*). It applies to a person who "while either within or outside the State, by his own conduct or that of another for which he is legally accountable," engages in conduct that amounts to an offense if "the offense is committed either wholly or partly within the State." 720 ILCS 5/1-5.

63. Contracts made in violation of licensing requirements intended to protect the public, or in violation of criminal laws imposing substantial penalties, are void. *Chatham Foot Specialists, P.C. v. Health Care Serv. Corp.*, 216 Ill. 2d 366, 380, 837 N.E.2d 48 (2005). Neither choice of law clauses or other contractual devices can be used to avoid invalidation of loans made at criminally usurious rates. *Madden v. Midland Funding, LLC,* 237 F. Supp. 3d 130, 150 (S.D.N.Y. 2017) ("That New York chose to criminalize such conduct is further evidence that its usury prohibition is a fundamental public policy."); *MacDonald v. CashCall, Inc.,* 16cv2781, 2017 U.S. Dist. LEXIS 64761, 2017 WL 1536427, *7 (D.N.J., April 28, 2017).

64. The Illinois Department of Financial and Professional Regulation has repeatedly brought cases against unlicensed out of state tribal and other lenders that make loans via the Internet or similar means to Illinois residents in Illinois. *See, e.g., In the Matter of Red Leaf Ventures, LLC,* No. 12 CC 569); *In the Matter of Money Mutual, LLC*, No. 12 CC 408; *In the Matter of Hammock Credit Services*, No. 12 CC 581; *In the Matter of Makes Cents, Inc., d/b/a Maxlend*, No. 17 CC 133.

65. The excessive interest charges imposed by Defendants were willful.

## COUNT I -- DECLARATORY AND INJUNCTIVE RELIEF AGAINST ILLEGAL CONDUCT

66. Plaintiffs incorporate paragraphs 1-65.

67. This claim is against all Defendants.

68. There is a controversy between Plaintiffs and the class, on the one hand, and Defendants, on the other, as to whether Plaintiffs and the class members must repay the loans made to them.

69. Declaratory relief will resolve such controversy.

70. An injunction is necessary to prevent Defendants from taking any action to collect the void debts.

## CLASS ALLEGATIONS

71. Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(2).

72. The class consists of (a) all individuals with Illinois addresses (as of the time the loans were made, according to the loan documents) (b) to whom a loan was made via one or more of the FNLA websites (c) at more than 9% interest (d) which loan has not been paid in full.

73. Plaintiffs may alter the class definition to conform to developments in the case and discovery.

74. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

75. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

76. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have

retained counsel experienced in class actions and consumer credit litigation.

77. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

78. Defendants have acted on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate.

79. The class is entitled to a declaration that Defendants are not entitled to collect on the loans described, an injunction against any further collection efforts by Defendants, and restitution of all such amounts collected by Defendants.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

i. Injunctive relief;

ii. Declaratory relief;

iii. Restitution of all amounts collected on the loans from members of the class;

iv. Costs of suit; and

v. Such other and further relief as the Court deems proper.

**COUNT II – ILLINOIS INTEREST ACT**

80. Plaintiffs incorporates paragraphs 1-65.

81. This claim is against all Defendants.

82. Defendants contracted for and collected loans at more than 9% interest from Plaintiff and the class members, in violation of 815 ILCS 205/4.

83. Plaintiffs and the class members are entitled to statutory damages under 815 ILCS 205/6.

## CLASS ALLEGATIONS

84. Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

85. The class consists of (a) all individuals with Illinois addresses (as of the time the loans were made, according to the loan documents) (b) to whom a loan was made via one or more of the FNLA websites (c) at more than 9% interest (d which loan is still outstanding or has been paid on or after a date two years prior to the filing of suit.

86. Plaintiffs may alter the class definition to conform to developments in the case and discovery.

87. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

88. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

89. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

90. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

91. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible; and

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

i. Damages as provided in 815 ILCS 205/6.

ii. Attorney's fees, litigation expenses, and costs of suit; and

iii. Such other and further relief as the Court deems proper.

**COUNT III – PREDATORY LOAN PREVENTION ACT**
**AND ILLINOIS CONSUMER FRAUD ACT**

92. Plaintiffs incorporate paragraphs 1-65.

93. This claim is against all Defendants.

94. Defendants contracted for and collected loans prohibited by the Illinois Predatory Loan Prevention Act.

95. Violation of the Predatory Loan Prevention Act is a violation of the Illinois Consumer Fraud Act. 815 ILCS 505/1 *et seq*.

**CLASS ALLEGATIONS**

96. Plaintiffs bring this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

97. The class consists of (a) all individuals with Illinois addresses (as of the time the loans were made, according to the loan documents) (b) to whom a loan was made via one or more of the FNLA websites (c) at more than 9% interest (d) on or after a date three years prior to the filing of this action.

98. Plaintiffs may alter the class definition to conform to developments in the case and discovery.

99. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

100. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

101. Plaintiffs will fairly and adequately represent the class members. Plaintiffs have retained counsel experienced in class actions and consumer credit litigation.

102. Plaintiffs' claims are typical of the claims of the class members. All are based on the same factual and legal theories.

103. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible; and

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiffs and the class and against Defendants for:

i. Compensatory damages;

ii. Punitive damages;

iii. Attorney's fees, litigation expenses, and costs of suit; and

iv. Such other and further relief as the Court deems proper.

## COUNT IV – RICO

104. Plaintiff Sharma incorporates paragraphs 1-65.

105. This claim is against Defendants Jacobs, Kapital Solutions, and John Does 1-20, who are the RICO "persons."

106. All loans made via the FNLA websites to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (36%).

107. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

108. The lending operations represented by the FNLA websites comprise an enterprise affecting interstate commerce, in that they purport to be located in Canada and make loans to Illinois and other U.S. residents via the Internet.

109. Defendants Kapital Solutions, Jacobs, and John Does 1-20, are associated with the

enterprise.

110. Defendants Kapital Solutions, Jacobs, and John Does 1-20, conducted or participated in the conduct of the affairs of the enterprise through a pattern of collection of unlawful debt, as set forth above, in violation of 18 U.S.C. §1962(c).

111. Kapital Solutions underwrote, disbursed, and collected the unlawful loans.

112. The only thing Kapital Solutions did not do was put its name on the loan documents, which were made using the assumed names in Exhibit H.

113. Plaintiff was deprived of money as a result.

## CLASS ALLEGATIONS

114. Plaintiff brings this claim on behalf of a class.

115. The class consists of (a) all individuals with Illinois addresses (as of the time the loans were made, according to the loan documents) (b) to whom a loan was made via one or more of the FNLA websites at more than 72% interest (all such loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

116. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

117. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether the loans at issue are "unlawful debts" as defined in RICO.

b. Whether the lending operations represented by the FNLA websites comprise an "enterprise."

c. Whether Defendants are associated with the enterprises.

d. Whether Defendants conducted or participated in the affairs of these enterprises through a pattern of making and collecting unlawful loans.

118. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

119. Plaintiff's claims is typical of the claims of the class members. All are based on the same factual and legal theories.

120. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Treble damages;

ii. Attorney's fees, litigation expenses and costs of suit; and

iii. Such other or further relief as the Court deems proper.

**COUNT VI – RICO**

121. Plaintiff Sharma incorporates paragraphs 1-65.

122. This claim is against Defendants Jacobs, Kapital Solutions, and John Does 1-20, who are the RICO "persons."

123. All loans made via the FNLA websites to Illinois residents are (a) unenforceable under Illinois law in whole or in part as to principal or interest because of the laws relating to usury, and (b) were incurred in connection with the business of lending money at a rate usurious under Illinois law, where (c) the usurious rate is at least twice the enforceable rate (36%).

124. The loans are therefore "unlawful debts" as defined in 18 U.S.C. § 1961(6).

125. The lending operations represented by the FNLA websites comprise an enterprise affecting interstate commerce, in that they purport to be located in Canada and make loans to Illinois and other U.S. residents via the Internet.

126. Defendants Kapital Solutions, Jacobs, and John Does 1-20, agreed to conduct the

business of lending money at a rate usurious under Illinois law, and did in fact carry out such agreement, in violation of 18 U.S.C. §1962(d).

127. Kapital Solutions underwrote, disbursed, and collected the unlawful loans.

128. The only thing Kapital Solutions did not do was put its name on the loan documents, which were made using the assumed names in Exhibit H.

129. Plaintiff was deprived of money as a result.

**CLASS ALLEGATIONS**

130. Plaintiff brings this claim on behalf of a class.

131. The class consists of (a) all individuals with Illinois addresses (as of the time the loans were made, according to the loan documents) (b) to whom a loan was made via one or more of the FNLA websites at more than 72% interest (all such loans qualify) (c) which loan was made on or after a date four years prior to the filing of suit.

132. The class is so numerous that joinder of all members is not practicable. On information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

133. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are:

a. Whether the loans at issue are "unlawful debts" as defined in RICO.

b. Whether the lending operations represented by the FNLA websites comprise an "enterprise."

c. Whether Defendants agreed to conduct a business of lending money at more than twice the lawful rate under Illinois law;

d. Whether Defendants carried out such agreement

134. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

135. Plaintiff's claim is typical of the claims of the class members. All are based on the same factual and legal theories.

136. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Treble damages;

ii. Attorney's fees, litigation expenses and costs of suit; and

iii. Such other or further relief as the Court deems proper.

**COUNT IV – UNJUST ENRICHMENT**

137. Plaintiff Sharma incorporates paragraphs 1-62.

138. This claim is against all Defendants.

139. Defendants obtained money from Plaintiff and the class members through unjust means, and should in equity be required to disgorge such money.

**CLASS ALLEGATIONS**

140. Plaintiff brings this claim on behalf of a class, pursuant to Fed. R. Civ. P. 23(a) and (b)(3).

141. The class consists of (a) all individuals with Illinois addresses (as of the time the loans were made, according to the loan documents) (b) to whom a loan was made via one or more of the FNLA websites (c) at more than 36% interest (d) on or after a date six years prior to the filing of this action.

142. Plaintiff may alter the class definition to conform to developments in the case and discovery.

143. The class is so numerous that joinder of all members is not practicable. On

information and belief, based on the making of loans over the Internet using form documents, there are at least 100 class members.

144. There are questions of law and fact common to the class members, which common questions predominate over any questions relating to individual class members. The predominant common questions are whether Defendants engage in a practice of making and attempting to collect illegal loans.

145. Plaintiff will fairly and adequately represent the class members. Plaintiff has retained counsel experienced in class actions and consumer credit litigation.

146. Plaintiff's claims are typical of the claims of the class members. All are based on the same factual and legal theories.

147. A class action is superior for the fair and efficient adjudication of this matter, in that:

a. Individual actions are not economically feasible.

b. Members of the class are likely to be unaware of their rights.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the class and against Defendants for:

i. Appropriate damages;

ii. Costs of suit; and

iii. Such other and further relief as the Court deems proper.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

Daniel A. Edelman
Dulijaza (Julie) Clark
Alexandra Huzyk
**EDELMAN, COMBS, LATTURNER & GOODWIN, LLC**
20 South Clark Street, Suite 1800
Chicago, IL 60603-1841
(312) 739-4200
(312) 419-0379 (FAX)

Email address for service: courtecl@edcombs.com
Dedelman@edcombs.com
Jclark@edcombs.com
ahuzyk@edcombs.com

## JURY DEMAND

Plaintiffs demand trial by jury.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards. All rights relating to attorney's fees have been assigned to counsel.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## DOCUMENT PRESERVATION DEMAND

Plaintiffs hereby demand that each Defendant take affirmative steps to preserve all recordings, data, documents, and all other tangible things that relate to Plaintiffs, class members, the events described herein, any third party associated with any telephone call, campaign, account, loan, sale or file associated with Plaintiffs, and any loan, account or number or symbol relating to them. These materials are likely very relevant to the litigation of this claim. If any Defendant is aware of any third party that has possession, custody, or control of any such materials, Plaintiffs demand that Defendant request that such third party also take steps to preserve the materials. This demand shall not narrow the scope of any independent document preservation duties of the Defendant.

*/s/ Daniel A. Edelman*
Daniel A. Edelman

## CERTIFICATE OF SERVICE

Daniel A. Edelman certifies that on August 28, 2026 this document was filed via ECF, causing a copy to be sent to all counsel of record:

*/s/ Daniel A. Edelman*
Daniel A. Edelman

C:\Users\dfitzgerald\Downloads\amended complaint DAE 8-19-26 (1).wpd